WARTH v. LIEBOVITZ.

(Supreme Court, Appellate Division, Second Department. May 28, 1903.)

1. PATENTS—CONTRACTS—EXECUTION—RIGHT TO TERMINATE ROYALTIES.

Plaintiff signed and delivered to defendant a proposal whereby she agreed to furnish and install for defendant a patent machine for a certain sum and a royalty during the life of the patent, subject, however, to the conditions of a license agreement, a blank form of which was attached to the proposal, and which provided that the licensee might terminate the payment of royalties on certain conditions; but that he could only avail himself of the privilege in case the license or contract had been actually signed and delivered by him. *Held*, that defendant's formal acceptance of the proposal, followed by plaintiff's installation of the machine by plaintiff, fixed the rights of the parties, and gave defendant the right to terminate royalties, as though he had signed the license agreement.

2. SAME—RIGHT TO ROYALTY—WAIVER AT TRIAL.

Any claim of plaintiff to royalties under the clause of the contract under which she installed a patent machine for defendant, providing that he could not terminate royalties if he used for the same purpose any other machine, was waived by the statement of plaintiff's attorney to the court, after its charge, that plaintiff was not asking for damages on account of defendant using the machine of another maker after return of plaintiff's machine.

3. SAME—ROYALTIES.

Under a contract to install a patent machine for $450 and a semiannual royalty of $150, the $450 is not royalty within the provision for terminating payment of royalties by return of the machine "with payment of royalty up to date of such return."

4. SAME—WHEN DUE—PRESUMPTION.

Under a contract for a patent machine providing for payment of a semiannual royalty it is to be presumed, in the absence of proof as to when such royalties became due, that none were due when the machine was returned in less than six months of its installation within the provision for terminating payment of royalties by return of the machine with payment of royalty up to date of such return.

**5. SAME—RETURN OF MACHINE—EVIDENCE.**
    Evidence in an action for royalties on a patent machine *held* sufficient
to show a return of the machine so as to terminate payment of royalties
under provision of the contract.

Appeal from Trial Term, Richmond County.

Action by Apollonia Warth, trading and doing business under the
firm name and style of Albin Warth, against Simon Liebovitz. From
a judgment for plaintiff, and from an order denying a motion for a
new trial, defendant appeals. Modified.

Argued before GOODRICH, P. J., and BARTLETT, WOOD-
WARD, HIRSCHBERG, and HOOKER, JJ.

Gibson Putzel (Benjamin G. Paskusz, on the brief), for appellant.
A. J. Koehler, for respondent.

HOOKER, J.   Plaintiff brought this action to recover damages for
the breach of a contract.   The conceded facts are as follows:   On
September 21, 1899, plaintiff signed and delivered to defendant a pro-
posal whereby she agreed to furnish to defendant a patent cutting ma-
chine, with the electrical appliances necessary for its operation, and
to install the same completely in defendant's premises for the sum of
$450 and a semiannual royalty of $150 during the term of the patent
dated February 16, 1892, and $75 semiannually thereafter during the
unexpired term of another patent dated September 20, 1898, subject,
however, to the terms and conditions of an instrument known as a
"license agreement," a blank form of which was attached to the pro-
posal.   On the following day, by supplemental writing, known as
an "addition" thereto, she agreed to keep the machine in repair for
a year, and to furnish a grinding machine.   On the 22d of September,.
1899, the defendant signed an agreement whereby he agreed with the
plaintiff to a license for the patent cutting machine, to accept the pro-
posal dated September 21, 1899, and "to execute a license and agree-
ment in accordance with the terms and conditions in said proposal"
after the machine had been furnished and erected by the plaintiff in
defendant's premises.   The license agreement attached to the pro-
posal was in the nature of a contract apparently complete in its terms,
except that the names of the licensees, dates, and the consideration
were left blank, and the same was not signed by either the plaintiff or
the defendant.   The seventh paragraph of that license provided as fol-
lows:

"The said licensees may terminate the payment of royalty herein mentioned
upon the condition that the aforesaid machine  *  *  *  shall be returned
and delivered to said licensor  *  *  *  by the said licensees with payment
of royalty up to the date of such return,  *  *  *  and upon the further con-
dition, and the said licensees agree, that they will not thereafter use or au-
thorize, or allow to be used, directly or indirectly, in their business or else-
where, any other cloth-cutting machine, until all the patents herein mentioned
shall have run out; but said licensees can only avail themselves of the priv-
ilege granted by this (seventh) clause in case this license or contract has
been actually signed and delivered by them."

After the contract and acceptance had been executed and delivered,
the plaintiff delivered the cloth-cutting machine, and erected it on de-
fendant's premises.   There remained a little wiring to be done before

its complete installation, but plaintiff was prevented from accomplishing this by the refusal of defendant to allow her to do it, and, so far as the questions in this case are concerned, it must be deemed that the plaintiff fully complied on her part with the undertaking of delivery and installation. Although this was done, it is conceded in the evidence that the defendant never signed or delivered the license agreement referred to in the contract. Shortly after plaintiff had installed the machine, the defendant sought to take advantage of the privilege given to him by the seventh paragraph of the license agreement by returning it. Thereafter this action was commenced, and plaintiff obtained a verdict for the full amount of the $450, together with the royalties mentioned in the proposal for the full terms of the respective patents, less the anticipatory interest, and from the judgment entered upon that verdict, and from an order denying the motion for a new trial, defendant appeals to this court.

It is urged by the respondent that the defendant's right to terminate the payment of royalty purported to be given him under the terms of the seventh paragraph of the license did not vest until the defendant actually signed and delivered the license contract itself, and refers to the last clause of that paragraph to sustain his position. We think, however, that the respective rights and liabilities of each party were fully determined upon the formal acceptance of plaintiff's proposal, to which was attached a copy of the license agreement, followed by the admitted erection and installation of the machine by the plaintiff. The physical act of the defendant's signing the paper upon which was written or printed the license could not be said to grant the plaintiff any greater rights than she already had upon the defendant's formal acceptance of her definite proposal, nor could defendant's default in signing have inured to his benefit. That clause of the seventh paragraph relating to the signing of the license is without legal effect here, and the rights of the parties under the conditions of that paragraph were established upon the acceptance of plaintiff's offer.

It is to be noticed that that paragraph provided that the payment of royalty might not be terminated if the defendant used or authorized to be used in his business or elsewhere any other cloth-cutting machine than that manufactured under the plaintiff's patents. There is some evidence in the record that defendant, upon the return of the machine, commenced the use in his place of business of a machine of different manufacture; but this question must be eliminated in the decision of this appeal for the reason that after the charge of the court plaintiff's attorney waived any claim he might have predicated upon that clause by his statement to the court that the plaintiff was not asking for damages on account of the defendant using the machine of another maker after plaintiff's machine had been returned. It was admitted upon the trial that when the return of plaintiff's machine was attempted to be made no moneys were tendered on behalf of defendant to the plaintiff or any one in her employ, and that no offer was made by the defendant to pay the plaintiff either the $450 mentioned in the proposal or any sum as royalty. It is conceded that the defendant has never paid anything under the terms and conditions of this contract. The effect of the seventh paragraph

is that the licensees may terminate the payment of royalties upon condition that the machine be returned "with payment of royalty up to date of such return," and the respondent contends that, inasmuch as the initial payment of $450 and at least one royalty of $150 was not made upon returning the machine, the defendant is not in a position to take advantage of the privilege afforded to him under the paragraph in question to terminate the payment of royalties. Her position, however, is not tenable, for the initial payment of $450 is nowhere, either in the proposal, the acceptance, or the license, denominated or treated as a royalty. The language, "with payment of royalty up to the date of such return," cannot, then, be held to embrace this $450, and defendant was under no obligation to pay or tender that sum as a condition precedent to his taking advantage of the termination clause of the license.

The respondent also urges that the first royalty should have been paid at the time of the return; but the evidence shows that the return was made long prior to the expiration of six months after the date of the proposal and acceptance, and, in the absence of any proof as to when the semiannual royalties became due, it must be presumed that no royalty was due at the time of the return. Although made before the expiration of the first six months' period, it may be that a portion, at least, of the royalty had been earned.

This brings us to a consideration of the final question, arising under the terms of the clause under consideration, namely, did the defendant return the machine? If he did not, there is some ground, perhaps, for sustaining the recovery. If he did not, however, he became absolutely entitled to be relieved from the payment of further royalties, and the judgment may not stand. After the learned court had finished the charge to the jury, defendant requested the court to charge that "the jury may not find any damage beyond $450 and the amount of one royalty of $150 and interest on these amounts." This request was refused, the defendant excepted, and the question is fairly raised. We think the evidence establishes as matter of law that the defendant fully accomplished a delivery of this machine to the plaintiff, and that the court erred in submitting the question to the jury whether or not such a return had been made. The witness Sperger, called by defendant, testified that he took the machine from defendant's place, and delivered it in plaintiff's place; that on the first trip he delivered the trolley pole, a couple of boxes, and other machinery, which he cannot recall; that he personally saw one of the plaintiff's sons, who were concededly her agents; that he went upstairs, and told him that he had machinery to return to him from the defendant; that he stopped the witness from delivering the machinery; that he drove off, and came back, and placed a few boxes of machinery in front of the feet of plaintiff's son about five feet from the entrance. The second time he said nothing to plaintiff's sons, but took all the machinery that he had, a few boxes, rods, and a big lot of loose machinery, put them all in the hallway of plaintiff's premises, and called up, and plaintiff's son came down, and saw all that was in the hall, upon which he had witness arrested, but that the witness was later discharged. The witness Isaacs, sworn for the defendant, testified

that he was foreman in defendant's factory; that he saw the two deliveries made by Sperger; that he delivered and left upon plaintiff's premises a third load of material; and that these three deliveries comprised all the material and machinery that had been installed by plaintiff at defendant's place. No witness was called to dispute these statements, and upon cross-examination the plaintiff's only witness, her son, who was seen by Sperger, admitted that he recollected seeing part of the machinery in question lying in the street in front of plaintiff's premises; that he knows a carman came and tried to deliver some parts of the machine, and that he refused to allow him to leave them there; and that he was acting at that time for his mother, the plaintiff. The view that the return was complete is perhaps strengthened by the fact that it nowhere appears that plaintiff's agent made any claim at the time of the delivery that only part of the machine had been returned, and it is to be noticed, too, that he does not appear to have demanded the payment of any royalties. All of the evidence relating to the act of the delivery and of the return of this machine stands undisputed in the case, and we must hold that it was quite sufficient to show the return by the defendant, and to bring him within the provisions of the seventh paragraph of the license agreement, and that by such delivery he obtained the advantages thereunder which he sought.

The initial $450, mentioned in the proposal under date of September 21st, has never been paid. The plaintiff is, of course, entitled to this, and the defendant does not dispute his liability. The machinery actually remained in defendant's possession during some period of time after its installation, although it does not appear whether it was used by the defendant or not, nor is that material. Its presence in defendant's place of business entitled the plaintiff to some royalty, and, if any at all, at least to one installment of $150. The record does not disclose that the defendant denies his liability to pay the first installment of royalty.

These views lead us to direct a modification of the judgment by reducing it to $450, with interest from the 21st day of September, 1899, together with the sum of $150, and interest from the 21st day of March, 1900, with a 5 per cent. allowance upon these reduced sums, together with costs included in the judgment; and, as so modified, the judgment should be affirmed, without costs of this appeal. All concur.